IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHADEIRA ROSSER,<br>　　　　　Plaintiff,<br><br>　　　　v.<br><br>CROTHALL HEALTHCARE, INC.,<br>　　　　　Defendant. | CIVIL ACTION<br><br><br><br>NO.  22-4925 |

MEMORANDUM

**HODGE, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　August 13, 2024

## I.　　INTRODUCTION

Plaintiff Khadeira Rosser brings this action against Defendant Crothall Healthcare, Inc., alleging retaliation, sex discrimination, and hostile work environment under Title VII of the Civil Rights Act of 1964, the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). (*See generally* ECF No. 1.) Before the Court is Defendant's Motion to Compel Arbitration. (ECF No. 5.) Plaintiff opposed the motion, and Defendant filed a reply. (ECF Nos. 8-9.) For the reasons stated below, the Court will grant Defendant's Motion and stay the case pending the completion of the arbitration because the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA") does not apply to Plaintiff's case and the Arbitration Agreement's (the "Agreement") delegation clause is valid and enforceable. Plaintiff is, thus, bound by the existing arbitration agreement.

## II.　　BACKGROUND[1]

Plaintiff worked for Defendant Crothall Healthcare, Inc.—a Compass entity—as a housekeeper from January 4, 2021 until she resigned on August 4, 2021. (ECF No. 1 at 3 ¶ 8; ECF

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

No. 5 at 3.**)** Plaintiff alleges that less than two months after she began working for Defendant, she began experiencing harassment from a co-worker, Earl B. (ECF No. 1 at 3 ¶ 10.) Earl B.'s harassment towards Plaintiff included inappropriate behavior, comments, and advances. (*Id.*) Plaintiff reported Earl B.'s inappropriate behavior to her supervisor, Solomon Lewis, multiple times and requested that he keep Earl B. separate from her when assigning work. (*Id.* at 3 ¶ 11.) Despite Plaintiff's request to her supervisor, Earl B's harassment escalated to sexual assault on July 23, 2021. (*Id.* at 4 ¶ 12.) Specifically, Earl B. "pushed [Plaintiff] up against the wall, locked her legs between his, and trapped her arms by pressing them against her chest with his upper body" and then "began kissing her on her lips" while Plaintiff "attempted to struggle and push him back." (*Id.* at 4 ¶ 17.) Plaintiff alleges that she reported the incident to her supervisor who asked her to write a statement before sending her back to work. (*Id.* at 4 ¶ 18.) On July 25, 2021, Plaintiff claims she told her union she did not want to work for Defendant unless it revoked Earl B's access to the building. (*Id.* at 4 ¶ 19.) Plaintiff alleges that Defendant told her that it would continue to employ Earl B. as it continued to investigate her allegations. (*Id.* at 4-5 ¶ 20.) Subsequently, Plaintiff requested time off work, (*Id.* at 5 ¶ 21.), before she resigned her employment with Defendant on August 4, 2021. (*Id.* at 5 ¶ 23; ECF No. 5 at 3.)

On January 28, 2022, Plaintiff dual-filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (ECF No. 1 at 2 ¶ 3.) The EEOC issued a Right to Sue letter on September 13, 2022. (ECF No. 1-2 at 2.) On December 12, 2022, Plaintiff filed the operative complaint in which she asserted claims for retaliation, sex discrimination, and hostile work environment under Title VII of the Civil Rights Act of 1964, the PHRA, and the PFPO. (*See generally* ECF No. 1.) On March 17, 2023, Defendant filed its motion to compel arbitration of Plaintiff's claim. (*See* ECF No. 5.)

In its Motion, Defendant argues that this dispute is subject to binding arbitration under a Mutual Arbitration Agreement (the "Agreement") between Plaintiff and Defendant that Plaintiff signed as a term and condition of her employment on January 29, 2021. (*See* Decl. of Demetra Bell, ECF No. 5-2 at 6.) Defendant claims that the Arbitration Agreement requires Plaintiff to arbitrate any employment-related claims. (ECF No. 5 at 6.) The Agreement contains the following clause regarding the scope of the agreement and covered claims:[2]

> I and Compass Group USA. Inc. and its subsidiaries, sectors, affiliates, and divisions (collectively "Compass Entities") mutually agree to utilize binding individual arbitration as the sole and exclusive means to resolve all legal claims between us, including without limitation those that may arise out of or be related to my employment, compensation, or termination of employment. I and the Compass Entities waive our rights to bring a claim against the other in a court of law and in doing so, **specifically waive our rights to a jury**. Except as provided below, any claim, dispute, and/or controversy that I may have against the Compass Entities (or their directors, officers, employees, or agents), or that the Compass Entities may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"), except that if for any reason arbitration is unavailable under the FAA, then the law of the state in which I last worked for any of the Compass Parties shall govern this Agreement. The FAA applies to this Agreement because my employer's business involves interstate commerce.

(ECF No. 5-2 at 6 (emphasis in original).)

In opposition to Defendant's motion, Plaintiff argues that (1) the Arbitration Agreement is invalidated by Congress enacting the EFAA; (2) the Delegation Clause is both procedurally and

---

[2] Although, the Arbitration Agreement was not attached to Plaintiff's Complaint, it can still be considered at the motion to dismiss stage without converting the motion into a motion for summary judgment because it is "integral" to Plaintiff's employment-related claims. *See Hrapczynski v. Bristlecone, Inc.*, No. 20-cv-06014, 2021 WL 3209852, at *2-3 (E.D. Pa. July 29, 2021); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (finding that courts may rely on a "document integral to or explicitly relied upon in the complaint") (internal citations omitted); *Asberry-Jones v. Wells Fargo Bank, Nat'l Ass'n*, No. 19-83, 2019 WL 2077731, at *3 (E.D. Pa. May 10, 2019) (noting that the Court is "not compelled to apply a summary judgment standard because [a plaintiff] failed to mention the Arbitration Agreement in her complaint. Indeed, we cannot envision a plaintiff choosing to file a complaint in federal court will affirmatively plead the existence of an arbitration provision.").

substantively unconscionable and, therefore, invalid and unenforceable; (3) the Agreement as a whole is both procedurally and substantively unconscionable and, therefore, invalid and unenforceable; and (4) forcing Plaintiff to arbitrate would be against public policy. (*See* ECF No. 8 at 5, 9, 13, 15.)

### III.   LEGAL STANDARD

In deciding whether a valid arbitration agreement exists between the parties, the Court must first decide whether to apply Federal Rule of Civil Procedure 12(b)(6) or the Rule 56 standard of review. *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 117 (3d Cir. 2015). The Court will review a motion to compel arbitration under the Rule 12(b)(6) standard "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that . . . a party's claims 'are subject to an enforceable arbitration clause[.]'" *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (citation omitted); *see also Richards v. Am. Acad. Health Sys., LLC*, No. 20-0059, 2020 WL 2615688 (E.D. Pa. May 22, 2020). Plaintiff does not dispute that she entered into an Arbitration Agreement with Defendant. Therefore, the Court will review the Motion under the Rule 12(b)(6) standard. *See* Fed. R. Civ. P. 12(b)(6). Under this standard, the Court accepts as true all factual allegations in the Complaint and its supporting documents. *See Guidotti*, 716 F.3d at 776; *see also CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (in applying the 12(b)(6) standard to a motion to compel arbitration, the court "accept[s] as true the factual allegations set forth in the Complaint" and may "consider the substance of the contracts that ostensibly compel arbitration.").

### IV.   DISCUSSION

In assessing whether there is an enforceable arbitration agreement, courts must affirmatively answer two questions pursuant to § 4 of the Federal Arbitration Act: (1) whether the

parties entered into a valid arbitration agreement and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). In this matter, two issues must be analyzed in order to determine whether Defendant can compel arbitration. First, as a threshold matter, the Court will address whether the EFAA invalidates the Arbitration Agreement. Second, if the EFAA does not invalidate the Agreement, the Court must decide whether the Delegation Clause or the arbitration agreement as a whole are valid and enforceable. For the reasons that follow, the Court has determined that the Arbitration Agreement is valid and enforceable because the EFAA does not apply to this matter, and the delegation clause is not unconscionable or against public policy.

    A.    **EFAA**

The Federal Arbitration Act ("FAA") governs the enforceability and scope of arbitration agreements. 9 U.S.C. §§ 1-307. "[C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA reflects both a "'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 563 U.S. at 339 (first quoting *Moses H. Cone, Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); then quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). The FAA also contains a savings clause, which provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Generally, the applicable contract defenses include fraud, duress, or unconscionability. *Concepcion*, 563 U.S. at 339.

On March 3, 2022, President Biden signed the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 into law, which amends the FAA. Pub. L. No. 117-90, 136 Stat. 26 (2022) (codified at 9 U.S.C. § 402) ("EFAA"). The Act provides in part as follows:

> In general.--Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). The Act defines predispute arbitration agreement as follows: "The term 'predispute arbitration agreement' means any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement." 9 U.S.C. § 401(a)(1). As to the Act's applicability to conduct before the statute was enacted on March 3, 2022, the law also states: "This Act, and the amendments made by this Act, shall apply with respect to **any dispute or claim that arises or accrues on or after the date of enactment of this Act**." PL 117-90, March 3, 2022, 136 Stat 26 (emphasis added). As such, the EFAA "does not have retroactive effect." *Turner v. Tesla, Inc.*, 686 F. Supp. 3d 917, 924 (N.D. Cal. 2023); *see also Johnson v. Everyrealm, Inc.*, 657 F.Supp.3d 535, 550 (S.D.N.Y. Feb. 24, 2023) (collecting cases and finding that "the EFAA applies only to claims that accrued on or after March 3, 2022").

Defendant argues that the EFAA does not invalidate the parties' Arbitration Agreement because "[Plaintiff] had a complete cause of action (and, thus, her claims accrued) when the alleged harassment, discrimination, and retaliation occurred." (ECF No. 5-1 at 18.) Plaintiff argues that her dispute or claim arose after the EFAA was enacted because "the subject 'dispute or claim' between the parties hereto was nonexistent until Plaintiff first asserted her claims on December 12, 2022, which followed the enactment of the EFAA on March 3, 2022." (ECF No. 8 at 7.) In this action, there are several important dates that assist this Court in determining whether Plaintiff's

6

claims and dispute fall temporally within the scope of the EFAA: July 23, 2021, the date of the alleged sexual assault; August 4, 2021, the date of Plaintiff's resignation; January 28, 2022, the date Plaintiff dual-filed her charge of discrimination with the EEOC and PHRC; September 13, 2022, the date the EEOC issued a Right to Sue letter; and December 12, 2022, the date Plaintiff filed her Complaint.

Plaintiff's claims accrued when the adverse employment action occurred and she was injured, which was either July 23, 2021, when the assault occurred or August 4, 2021, when she resigned. *See, e.g.*, *Turner*, 686 F. Supp. 3d at 924 ("The adverse action underlying these claims was Turner's termination [on September 14, 2022]; the accrual date is after the EFAA was in effect."); *Hodgin v. Intensive Care Consortium, Inc.*, 666 F. Supp. 3d 1326, 1329 (S.D. Fla. 2023) ("Plaintiff's claim accrued when she was terminated in November of 2021."); *Newcombe-Dierl v. Amgen*, No. 22-2155, 2022 WL 3012211, at *5 (C.D. Cal. May 26, 2022) (citing *Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010)) ("[The plaintiff's] claims accrued when the adverse employment action occurred and she was injured, which was no later than November 12, 2021, the date of her termination.").

Contrary to Plaintiff's argument, this Court in *Steinberg v. Capgemini Am., Inc.* did not decide whether "the actual trigger date for a 'claim or dispute' 'arising and accruing' is the date of: (1) filing of the case or (2) the act of harassment itself" because both dates in the *Steinberg* matter were before the EFAA was enacted, so the *Steinberg* Court specifically did not settle the question. No. CV 22-489, 2022 WL 3371323, at *2 n.2 (E.D. Pa. Aug. 16, 2022). Whereas, multiple courts have found that a dispute arises when a plaintiff is in an adversarial posture with their employer. *See Famuyide v. Chipotle Mexican Grill, Inc.*, No. 23-1127, 2023 WL 5651915, at *3 (D. Minn. Aug. 31, 2023), aff'd, No. 23-3201, 2024 WL 3643637 (8th Cir. Aug. 5, 2024)

("[A] dispute comes into being when a person asserts a right, claim, or demand and is met with disagreement on the other side. . . . In this case, while the conduct in dispute occurred earlier, the actual dispute between [the plaintiff] and Chipotle—the moment when they took opposing positions—arose when [the plaintiff] filed her complaint in state court."); *Hodgin*, 666 F. Supp. 3d at 1329-30 ("A dispute entails disagreement, not just the existence of an injury (which would be the claim accruing)."). This Court agrees with the findings of its sister courts across the country.

Here, Plaintiff's dispute arose when she dual-filed her charge of discrimination with the EEOC and PHRC on January 28, 2022. *See, e.g.*, *Hodgin*, 666 F. Supp. 3d at 1330 ("[T]o say that a dispute arises only once a lawsuit is filed is far too limiting. Applying that reasoning here, I find that Plaintiff's dispute arose when she filed Charges of Discrimination against her employer with the EEOC in January 2022[.]"); *Silverman v. DiscGenics, Inc.*, No. 22-354, 2023 WL 2480054, at *2 (D. Utah Mar. 13, 2023) (holding the EFAA "would not apply to the plaintiffs' pretermination claims because the dispute concerning these claims arose when they filed charges of discrimination in the UALD"); *Zinsky v. Russin*, No. 22-547, 2022 WL 2906371, at *3 (W.D. Pa. July 22, 2022) (finding that the plaintiff's claim accrued after she sustained her alleged injury and the plaintiff's dispute arose when she filed a charge of discrimination with the EEOC). Accordingly, Plaintiff's claims accrued and her dispute arose before the EFAA was enacted, thus making the EFAA inapplicable in this case.

### B.     Unconscionability

Generally, courts decide the question of arbitrability, except "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). An agreement to arbitrate the issue of arbitrability must be made "clearly and unmistakably."

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). If such a so-called "delegation provision" is clear and unmistakable, then even arbitrability challenges based on the unconscionability of the arbitration agreement as a whole must be decided by the arbitrator. *Rent-A-Ctr., W., Inc.*, 561 U.S. at 72. Only challenges to the delegation provision specifically can be heard by the Court. *Id.* The Third Circuit instructs when an agreement contains a delegation clause, courts "cannot reach the question of the arbitration agreement's enforceability unless a party challenged the delegation clause and the court concludes that the delegation clause is not enforceable." *Williams v. Medley Opportunity Fund II, LP*, 965 F.3d 229, 237 (3d Cir. 2020) (quoting *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018)).

Here, Plaintiff specifically challenges that the delegation clause in the Agreement is unconscionable and unenforceable. (*See* ECF No. 8 at 9.) Plaintiff argues that the delegation clause "is a procedurally unconscionable contract of adhesion." (*Id.* at 10.) Defendant argues that the delegation clause was not procedurally unconscionable because (1) Plaintiff was not in a "job or no job scenario," as the Agreement included the option to opt out of the Agreement; (2) Plaintiff must submit an independent basis for unconscionability, separate from her arguments pertaining the whole Agreement; (3) the facts and findings in *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 541 (E.D. Pa. 2018)—a case Plaintiff relies on—are distinguishable; and (4) the Supreme Court held in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018) that an arbitration agreement may be a condition of employment. (*See* ECF No. 9 at 5.) The Court addresses the parties' most salient arguments.

Plaintiff may use the same arguments for her challenge to the delegation clause and the Agreement as a whole. *See MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226-27 (3d Cir. 2018) ("In specifically challenging a delegation clause, a party may rely on the same arguments that it

9

employs to contest the enforceability of other arbitration agreement provisions."). A contract is procedurally unconscionable under Pennsylvania law where there is "a lack of meaningful choice in the acceptance of the challenged provision." *Quilloin v. Tenet HealthSystem Philadelphia, Inc.*, 673 F.3d 221, 235 (3d Cir. 2012) (quoting *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007)). In matters where courts found agreements or provisions were procedurally unconscionable, the plaintiffs presented arguments about their educational background, limited employment options, the take-it-or-leave-it nature of the agreements, lack of explanation of terms, and other unique pressures. *See, e.g.*, *Alexander v. Anthony International, L.P.*, 341 F.3d 256 (3d Cir. 2003); *Scally v. PetSmart LLC*, No. 4:22-CV-06210, 2023 WL 9103618 (N.D. Cal. May 25, 2023); *Kohlman v. Grane Healthcare Company*, 279 A.3d 42 (Pa. Super. Ct. 2022).

Here, Plaintiff has the burden of establishing unconscionability, *see Curtis v. Cintas Corp.*, 229 F. Supp. 3d 312, 317 (E.D. Pa. 2017); yet, the only argument she presents regarding procedural unconscionability is that the Agreement had a take-it-or-leave-it nature. Plaintiff does not present any argument regarding her ability to understand the Agreement or whether she felt that she lacked other options. Further, this Court has found multiple times that "opt-out provisions in employment arbitration agreements are not procedurally unconscionable, rejecting a lack of meaningful choice or 'take-it-or-leave-it' argument of unconscionability." *Jenkins v. PetSmart, LLC*, No. 23-2260, 2023 WL 8548677, at *11 (E.D. Pa. Dec. 11, 2023) (collecting cases); *see also Matthew v. Gucci*, No. 21-434, 2022 WL 462406, at *10 (E.D. Pa. Feb. 15, 2022); *Nelson v. Gobrands, Inc.*, No. 20-5424, 2021 WL 4262325, at *8 (E.D. Pa. Sept. 20, 2021); *Stephenson v. AT&T Servs., Inc.*, No. 21-709, 2021 WL 3603322, at * 7, n.10 (E.D. Pa. Aug. 13, 2021) (collecting cases). As such, Plaintiff fails to meet her burden of establishing that the delegation clause is procedurally unconscionable.

Similarly, Plaintiff's only argument for substantive unconscionability is a circular argument that arbitration is "an inherently biased forum" evidenced by the enactment of the EFAA. (ECF No. 8 at 10-13.) This Court has already determined that the EFAA does not apply to this matter due to the temporal scope of Plaintiff's claims and dispute. Therefore, the Court is not in a position to second-guess Congress's decision regarding the non-retroactivity of the EFAA by indirectly applying its amendments to the FAA through arguments of substantive unconscionability or public policy. Such an approach would constitute a novel interpretation of the law, encroaching upon the legislative domain of what Congress could have enacted. Plaintiff does not make any other arguments regarding substantive unconscionability. *See, e.g.*, *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 543 (E.D. Pa. 2006) (examples of substantive unconscionability include "severe restrictions on discovery, high arbitration costs borne by one party, limitations on remedies, and curtailed judicial review"). Accordingly, Plaintiff fails to meet her burden of establishing that the delegation clause is substantively unconscionable. Furthermore, the reasoning used to reject the substantive unconscionability argument equally applies to Plaintiff's public policy arguments.

Because the Court finds that the delegation clause in the Agreement is valid and enforceable, Plaintiff's other arguments regarding the validity and enforceability of the entire Arbitration Agreement must be resolved by the arbitrators. Therefore, Defendant's Motion is granted.

## V.     CONCLUSION

For the reasons stated above, Plaintiff fails to prove the EFAA's applicability, and the delegation clause in the arbitration agreement applies to Plaintiff's remaining arguments regarding public policy, validity, and unconscionability. Therefore, Defendant's Motion to Compel

Arbitration is granted, insofar as the case shall proceed to arbitration in accordance with the Arbitration Agreement. In keeping with 9 U.S.C § 3. Further, Plaintiff's request for a stay during arbitration is granted, and the case will be stayed during the pendency of arbitration. *See Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he plain language of § 3 affords a district court no discretion to dismiss a case where one of the parties applies for a stay pending arbitration."). The parties shall notify the Court upon completion of the arbitration proceedings. An appropriate order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

  **HODGE, KELLEY B., J.**